**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| STARTECH ENVIRONMENTAL CORPORATION, | : | CASE NO. 10-50955 (AHWS) |
| | : | |
| Debtor-in-Possession. | : | MAY 6, 2010 |
| | : | |

**APPLICATION TO EMPLOY AND RETAIN**
**GENERAL CAPITAL PARTNERS LLC AS EXCLUSIVE SALES AND**
**MARKETING AGENT FOR THE DEBTORS FED R. BANKR. P.  2014(a)**

The Debtors and Debtor-In-Possession Startech Environmental Corporation (the "Debtor" or "Startech") hereby moves the Court for entry of an order authorizing it to employ and retain General Capital Partners LLC ("GCP") as exclusive sales and marketing agent pursuant to 11 U.S.C. §§ 327(a), 328(a) and 1107 and Fed. R. Bankr. P. 2014(a). In support hereof, the Debtors respectfully represent, upon information and belief, as follows:

**Jurisdiction**

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are 11 U.S.C. §§ 327(a), 328(a) and 1107 and Fed. R. Bankr. P. 2014(a).

**Background**

3. On April 27, 2010 (the "Petition Date"), the Debtor, filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

4.  The Debtor continues in possession of its property and has continued to operate and manage their business as debtors in possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

5.  No trustee, examiner or committee has been appointed in this case.

6.  The Debtor is a publicly traded environmental technology company commercializing its proprietary plasma processing technology known as the Plasma Converter™ that achieves closed-loop elemental recycling. The System irreversibly destroys hazardous and non-hazardous waste and industrial by-products while converting them into useful commercial products. These products include a rich synthesis gas called PCG (Plasma Converter Gas™), surplus energy for power, chemical industry feedstocks, metals and silicates for use and for sale. Startech operates from its facilities in Bristol, CT with offices in Wilton, CT. At year end in 2009, the Debtor had 16 employees, however, as of the filing date, the Debtor has 4 employees.

### Relief Requested

7.  The Debtor seeks to retain and employ GCP as its exclusive sales and marketing agent in these Chapter 11 cases on the terms set forth herein pursuant to 11 U.S.C. § 327(a), with GCP's fee structure to be approved pursuant to 11 U.S.C. § 328(a). Subject to Court approval, the Debtors have request to enter into an engagement agreement dated May 4, 2010 (the "Engagement Agreement"), pursuant to which GCP will provide services, as set forth in the Engagement Agreement and summarized below. A true and correct copy of the Engagement Agreement is attached hereto as Exhibit A. The terms and conditions of the Engagement Agreement were negotiated between the Debtors and GCP in good faith, at arm's length, and reflect the parties' mutual agreement as to the substantial efforts that will be required in this engagement and the compensation to be provided in connection therewith.

## GCP's Qualifications

8.  GCP is uniquely qualified to advise and to assist the Debtors in connection with its strategic alternatives and a transaction in these chapter 11 cases. GCP is an investment and advisory firm with expertise in mergers and acquisitions, capital raising, restructurings and other strategic advisory services. GCP's professionals have extensive experience in, among other things, assisting the Debtors with sales under 11 U.S.C. § 363. GCP is well qualified to provide the services required by the Debtor.

## GCP's Disinterestedness

9.  To the best of the Debtor's knowledge, information, and belief, and based upon the Affidavit of J. Gregory Barrow (the "Barrow Affidavit"), GCP is a "disinterested person" as that term is defined in 11 U.S.C. § 101(14).

10.  As described in detail in the Barrow Affidavit, GCP among other things, searched its client databases to determine whether it represents, or has represented, certain of the Debtors' creditors or other parties in interest in these proceedings, and/or matters wholly unrelated to these proceedings. Due to the size of GCP and the number of creditors and other parties in interest involved in this case, GCP may have represented certain of the Debtor's creditors or other parties in interest in matters wholly unrelated to this chapter 11 case. Except as may be described in the Barrow Affidavit, GCP does not, to its knowledge, represent any party with an interest materially adverse to the Debtors or their estate

11.  If any new facts or relationships are discovered, GCP will supplement its disclosure.

## Services to Be Provided by GCP

12.  Pursuant to the Engagement Agreement, GCP, among other things, will prepare a program which will include seeking parties interested in acquiring the Debtor's assets, stock or

3

business through a sale pursuant to 11 U.S.C. § 363 or a plan of reorganization.  In connection with a Transaction, as that term is defined in the Engagement Agreement, and as requested by the Debtor, GCP will:

    a. Market the Debtor's assets, stock or business which marketing activities may include the use of newspaper, magazines and journal advertising, conducting a pre-363 Sale bidders conference or such other methods as may be appropriate;

    b. Prepare electronic mails, website listings, advertising letters, fliers and/or similar sale materials which would include information regarding the sale of the Debtor's assets;

    c. Endeavor to locate parties who may have an interest in acquiring the Debtor's assets, stock or business;

    d. Circulate materials to interested parties regarding the Debtor's assets, stock or business, after the execution of confidentiality documents with interested parties;

    e. As necessary and requested, advise the Debtor as to the setup and execution of any sale of the Debtor's assets, stock or business outside the ordinary course of business; and

    f. Communicate regularly with the Debtor's and interested parties with respect to the status of services provided by GCP.

13.     The investment banking services that GCP will provide to the Debtor is necessary to enable the Debtor to maximize the value of its estate and to reorganize successfully.  The Debtor believes that the services will not duplicate the services that, subject to this Court entering or having entered appropriate orders, other professionals may provide to the Debtor in this chapter 11 case.

### Terms of GCP's Retention and Compensation

14.     The term of the Engagement Agreement shall be, except as set forth in the Engagement Agreement, beginning as of May 4, 2010 (the "Effective Date") and continuing until the later of (i) one hundred eighty (180) days after the Effective Date, (ii) the date on which

an order is entered by the Court confirming a plan of reorganization or (iii) the date on which an order is entered by the Bankruptcy Court dismissing the Debtors' Chapter 11 cases.

15. Subject to the Court's approval, and in accordance with 11 U.S.C. § 328(a) of the Bankruptcy Code, GCP will be paid under the terms of the Engagement Agreement as follows, the purpose of which is to compensate GCP for an increase in the sale price a successful bidder ultimately pay to purchase the Debtor's assets, stock or business, in excess of the initial bid set forth in the Excluded Party's Asset Purchase Agreement:

> Advisory Fee:
>
> The Debtors will pay an initial fee to GCP, due upon the Effective Date of $50,000.00.
>
> Sale Transaction Fee.  Upon the consummation of a Sales Transaction (as defined in Section 3.4) GCP shall receive a "Sales Transaction Fee" calculated as 25% of the Gross Value above the Champion Engineering Inc. initial stalking horse bid (the "Champion Stalking Horse Bid"). If a Sale Transaction occurs for the amount of the initial Champion Stalking Horse Bid or less, GCP shall not be entitled to any Sales Transaction Fee. GCP's Sales Transaction Fee is to be capped at, and shall not exceed $375,000 the Advisory Fee shall not operate to reduce the Sales Transaction Fee.
>
> **Example:** Assume Sale price is $2,000,000 and the Champion Stalking Horse Bid is $1,500,000 then GCP shall receive a Sale Transaction fee calculated as follows: $2,000,000 – $1,500,000= $500,000 x 25% = $125,000

16. In addition, the Debtor will reimburse GCP for all out-of-pocket expenses reasonably incurred.

17. The Debtor believes that the fee structure is comparable to compensation generally charged by investment banking firms of similar stature for comparable engagements, both in and out of bankruptcy.  In addition, the Debtor believes that the ultimate payout that could be received by GCP in the event that it is successful in closing a Transaction is reasonable and comports with the fees charged in the market for such services.

18.  GCP intends to apply to the Court for final allowance of compensation and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules of this Court, any guidelines provided by the United States Trustee, and pursuant to any additional procedures that may be established by the Court in this case; provided that the approval of GCP's fees and expenses in this case will be subject only to the standards contained in 11 U.S.C. § 328(a).  Since the payment of any Transaction Fee will be made based upon such a Transaction actually occurring and the amount of such fee will be determined pursuant to the terms set forth in the Engagement Agreement, GCP will not be submitting time records in support of its fee application as it relates to the Initial Fee, Transaction Fee or Advisory Fee.

## Basis For Relief Requested

19.  The Debtor seeks approval GCP's retention under 11 U.S.C. § 327(a) and approval of the compensation structure as set forth in Paragraph 18 of this Application (the "Fee Structure) pursuant to 11 U.S.C. § 328(a).  11 U.S.C. § 328(a) provides, in relevant part, that a debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis."  11 U.S.C. § 328(a) therefore permits the Court to approve the Fee Structure outlined herein and described in more detail in the Engagement Agreement.

20.  11 U.S.C. § 328 of the Bankruptcy Code permits the compensation of professionals, including investment bankers and financial advisors, on more flexible terms that reflect the nature of their services and market conditions.  As the United States Court of Appeals for the Fifth Circuit recognized in *In re National Gypsum Co.*, 123 F.3d 861 (5th Cir. 1997) (citations omitted):

6

> Prior to 1978, the most able professionals were often willing to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. The uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants reasonable compensation based on relevant factors of time and comparable costs, etc. Under present § 328 the professionals may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

*Id.* at 862.

21. The terms and conditions of the Engagement Agreement were negotiated by the Debtor and GCP at arm's length and in good faith. The Debtor respectfully submit that the provisions contained in the Engagement Agreement, viewed in conjunction with the other terms of GCP's proposed retention, are reasonable and in the best interests of the Debtor, its estate and creditors.

22. The Debtor believe that the Fee Structure is fair and reasonable and should be approved under 11 U.S.C. § 328(a) of the Bankruptcy Code. The Fee Structure appropriately reflects the nature of the services to be provided by GCP and the fee structures typically used by GCP and other investment banking firms, which do not bill their clients on an hourly basis. In particular, the Debtor believes that the Fee Structure creates a proper balance between a fixed fee and contingency fees based on the successful consummation of a Transaction.

23. Similar fixed and contingency fee arrangements have been approved and implemented in other chapter 11 cases in various Districts. *See, e.g., In re WCI Steel, Inc.*, Case No. 03-44662 (WTB) (Bankr. N.D. Ohio 2003) (order dated Dec. 8, 2003, approving the retention of Jefferies & Company, Inc., as financial advisors to the debtors pursuant to sections 327(a) and 328(a) of the Bankruptcy Code); *In re NextWave Personal Communications, Inc.*, Case No. 98-21529 (ASH) (Bankr. S.D.N.Y. Oct. 1, 2001) (order dated Oct. 1, 2001, approving

the employment of UBS Warburg LLC as financial advisors for the debtors pursuant to 327(a) and 328(a) of the Bankruptcy Code); *In re Casual Male Corp.*, No. 01-41401 (REG) (Bankr. S.D.N.Y. July 20, 2001) (Docket No. 197) (authorizing retention Robertson Stephens, Inc. as investment bankers for debtors under section 328); *In re PSINET. Inc.*, Case No. 01-13213 (REG) (Bankr. S.D.N.Y. May 31, 2001) (order dated July 12, 2001, approving the retention of Dresdner Kleinwort Wasserstein as investment bankers and financial advisors to the debtors, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code).

24. In view of the foregoing, the Debtor believe that the Fee Structure is fair and reasonable in light of (a) industry practice and prior precedent; (b) market rates charged for comparable services both in and out of the chapter 11 context; (c) the substantial experience of the GCP professionals with respect to investment banking and reorganization services; and (d) the nature and scope of work to be performed by GCP in this case.

## Notice

25. Notice of this Motion has been given to (i) the Office of the U.S. Trustee, Attn.: Steven E. Mackey, Giamo Federal Building, 150 Court Street, Room 302, New Haven, Connecticut 06510; (ii) the Debtor's pre-petition lender or its counsel; (iii) the twenty (20) largest unsecured creditors of the Debtor; and (iv) all entities that have entered notices of appearance in these proceeding as of the date hereof. The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

26. No prior motion for the relief requested herein has been made to this or any other Court.

WHEREFORE, the Debtor respectfully request that the Court (i) approve the Application and (ii) grant such other or further relief as the Court deems appropriate.

        THE DEBTOR:
        STARTECH ENVIRONMENTAL CORPORATION

By: /s/ Jeffrey M. Sklarz
    Craig I. Lifland (ct00976)
      clifland@zeislaw.com
    Jeffrey M. Sklarz (ct20938)
      jsklarz@zeisalaw.com
    Zeisler & Zeisler, P.C.
    558 Clinton Avenue
    Bridgeport, CT 06605-0186
    Telephone: (203) 368-4234
    Fax: (203) 367-9678