UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

| | |
|---|---|
| In re:<br><br>STARTECH ENVIRONMENTAL<br>CORPORATION,<br><br>    Debtor-in-Possession | Chapter 11<br><br>CASE NO. 10-50955 (AHWS) |

STARTECH ENVIRONMENTAL
CORPORATION,

    Debtor-in-Possession

    Movant

vs.

CHAMPION ENERGY, INC,

    Respondent

**ORDER AUTHORIZING AND APPROVING THE SALE OF SUBSTANTIALLY ALL
OF THE DEBTOR'S ASSETS OTHER THAN IN THE ORDINARY COURSE OF
BUSINESS, FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND
INTERESTS PURSUANT TO 11 U.S.C. §§ 105, 363(B) AND (F) AND FEDERAL RULE
OF BANKRUPTCY PROCEDURE 6004**

THIS MATTER came before the Court upon the Debtor's Motion For An Order (A)

Authorizing And Approving The Sale Of Substantially All Of The Debtor's Assets Other Than

In The Ordinary Course Of Business, Free And Clear Of Liens, Claims, Encumbrance And

Interests Pursuant To 11 U.S.C. §§ 105, 363(b) and (f) And Federal Rule of Bankruptcy Procedure 6004 (the "Sale Motion").[1]

Upon this Court's Order dated December 9, 2010 scheduling, among other things, a hearing (i) Authorizing and Approving Form of Purchase Agreement, (ii) Authorizing and Approving Bidding Procedures, (iii) Scheduling an Auction, (iv) Approving the Form and Manner of Notice Thereof, and (v) Granting Related Relief, all in Connection With the Sale of Substantially All of the Debtor's Assets (the "Bidding Procedures Order"); and due and sufficient notice of the proposed Sale, the Sale Motion, this Order, the Bidding Procedures Order, and the Sale Hearing (as defined below), having been given to all parties entitled to notice under the Bidding Procedures Order, and the Sale Hearing having been continued numerous times in open Court, including at an adjourned Sale Hearing held on July 12, 2011 at 10:00 a.m., and upon this Court's Order Rescheduling Hearing on Debtor's Motion To Sell Assets Free and Clear (Doc. Id. No. 193) and Related Relief, dated July 20, 2011, all as evidenced by certificates of service filed with this Court and affirmed on the record in this proceeding; and

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Sale Motion and/or the Asset Purchase Agreement (as defined herein). Capitalized terms not otherwise defined herein or not appearing in the Sale Motion and/or the Asset Purchase Agreement shall have the meanings ascribed to them in the United States Bankruptcy Code.

A hearing having been held before this Court on July 26, 2011 to approve the Sale pursuant to the terms of the Asset Purchase Agreement[2] (the "Sale Hearing"), at which time all parties in interest were afforded an opportunity to be heard; and the Court having considered the evidence proffered both for and against approval of the Sale.

NOW, THEREFORE, based upon all of the pleadings previously filed by the Debtor and other interested parties in connection with the Sale, the evidence presented, attested to, or proffered at or in connection with the Sale Hearing, and upon the entire record of the Sale Hearing; and after due deliberation thereon; and good cause appearing therefor;

IT IS HEREBY FOUND AND DETERMINED AS FOLLOWS:

I. **FINDINGS OF FACT:**

　　A. **Basis For Section 363 Sale**

　　　　1.　　Time is of the essence in consummating the Sale. Accordingly, to maximize the value of the Assets, it is essential that the sale of the Assets occur within the time constraints set forth in the Asset Purchase Agreement.

　　　　2.　　The Assets are property of the Debtor's estate and title thereto is vested in the estate.

　　B. **Notice Of Sale Of The Assets**

---

[2] Pursuant to the Asset Purchase Agreement filed with the Clerk of the Court attached to the Debtor's Notice of Filing <u>Notice Of Filing Asset Purchase Agreement With Miller Time Mining, LLC Pursuant To Order Rescheduling Hearing On Debtor's Motion To Sell Assets Free And Clear (Doc. Id. No. 193) And Related Relief dated July 20, 2011 (and hereafter, the Asset Purchase Agreement approved by this Order)</u>.

3

3.  Written notice ("Notice") of the Sale Hearing, pursuant to the certificates of service of Notice of the Sale Hearing and Sale filed by the Debtor on December 17, 2010, and July 25, 2011 with this Court, was transmitted to: (a) the Office of the United States Trustee and (b) to all (i) creditors as defined in Section 101(1) of the Bankruptcy Code; (ii) shareholders[3]; (iii) entities known to the Debtor to possess and/or exercise any control over any of the Assets; (iv) entities known to the Debtor to assert any rights in any of the Assets; (v) parties in interest and other entities and persons so entitled and that are known to the Debtor; (vi) all applicable federal, state, and local tax authorities with jurisdiction over the Debtor and/or the Assets; (vii) all federal, state, and local environmental authorities in jurisdictions in which the Debtor operates and/or in which the Assets are located; and (ix) all entities that have requested notice in the Debtor's Chapter 11 case.

4.  The Notice was adequate and sufficient under the circumstances of these Chapter 11 cases and this proceeding and complied with the various applicable requirements of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the procedural due process requirements of the United States Constitution.

C. **Good Faith Of Purchaser**

5.  Miller Time Mining, LLC ("Buyer") is purchasing the Assets in good faith and is a good faith purchaser within the meaning of 11 U.S.C. § 363(m), and is therefore entitled to the protection of that provision, and otherwise has proceeded in good faith in all respects in connection with this proceeding in that (a) the Buyer recognized that the Debtor was free to deal

---

[3] Per Certificate of Service dated December 17, 2010 (Doc. Id. No. 204).

with any other party interested in acquiring the Assets; (b) the Buyer agreed to the provisions in the Asset Purchase Agreement approved in the Bidding Procedures Order and as modified, that would enable the Debtor to accept a higher and better offer for the Assets at the Sale Hearing; (c) all payments to be made by the Buyer and other agreements or arrangements entered into by the Buyer in connection with the transactions have been disclosed, (d) the Buyer has not violated 11 U.S.C. § 363(n) by any action or inaction; and (e) the negotiation and execution of the Asset Purchase Agreement and any other agreements or instruments related thereto was in good faith.

### D. Approval Of Motion

6. The Buyer is a third-party purchaser unrelated to the Debtor.

7. The purchase terms, as set forth in the Asset Purchase Agreement, are fair and reasonable under the circumstances of this Chapter 11 case and this proceeding.

8. The Sale Motion should be approved as it is in the best interests of creditors.

9. The transaction contemplated in the Asset Purchase Agreement represents a fair and reasonable offer under the circumstances of this Chapter 11 case and this proceeding.

10. The Sale is not being entered into in order to escape liability for the debts of the Debtor's estate. The estate is unable to satisfy all of the Debtor's debts.

### E. The Proposed Buyer Is Not A Mere Continuation Of The Debtor

11. The following findings of fact relate to the conclusions of law set forth in Paragraph 11 of Section D infra:

   a. No common identity of incorporators, directors, or stockholders exists between the Buyer and the Debtor.

   b. The Buyer is not purchasing all of the Debtor's assets. The Buyer is not purchasing the Excluded Assets.

   c. The Sale is not being entered into fraudulently. The Sale has been properly noticed.

### F. Miscellaneous

12. To the extent that any Findings of Facts set forth in Section I, Paragraphs 1-14 and all sub-parts thereto constitute Conclusions of Law, the Court so concludes.

## II. CONCLUSIONS OF LAW

The Court hereby enters the following Conclusions of Law:

### A. Jurisdiction, Final Order And Statutory Predicates

1. The Court has jurisdiction to hear and determine the Sale Motion and to grant the relief requested in the Sale Motion pursuant to 28 U.S.C. §§ 157(b)(l) and 1334(b).

2. This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). To the extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure as made applicable by Rule 7054 of the Federal Rules of Bankruptcy Procedure, the Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth herein.

3.    This proceeding is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(2)(a), (n) and (o).

4.    The statutory predicates for the Sale Motion are Sections 363(b) and (f) of the Bankruptcy Code and Rules 2002(a)(2), 6004(a), (b), (c) and (e), 9014, and 9019(a) of the Federal Rules of Bankruptcy Procedure.

5.    The proposed Sale constitutes a sale of substantially all of the assets of the Debtor's estate outside the ordinary course of business within the meaning of Section 363(b) of the Bankruptcy Code.

**B.**    **<u>Section 363 Sale</u>**

6.    The Assets are property of the Debtor's estate and title thereto is vested in the estate.

7.    The Debtor is authorized to sell property of the estate, pursuant to 11 U.S.C. § 363(b), free and clear of the Liens if the applicable provisions of 11 U.S.C. § 363(f) have been satisfied.

8.    The provisions of Section 363(f) of the Bankruptcy Code have been satisfied.

9.    Given all of the circumstances of these Chapter 11 cases and the adequacy and fair value of the purchase price under the Asset Purchase Agreement, the proposed Sale of the Assets to the Proposed Buyer constitutes a reasonable and sound exercise of the Debtor's business judgment and should be approved.

7

C. **Retention Of Jurisdiction**

10. It is necessary and appropriate for the Court to retain jurisdiction to interpret and enforce the terms and provisions of this Order and the Asset Purchase Agreement and to adjudicate, if necessary, any and all disputes concerning the assumption and assignment of the executory contracts and unexpired leases, any right, title, (alleged) property interest, including ownership claims, relating to the Assets and the proceeds thereof, as well as the extent, validity and priority of all Liens relating to the Assets.

D. **No Successor Liability**

11. The Buyer does not constitute a successor to the Debtor or its estate.

   a. The Sale does not amount to a consolidation, merger or de facto merger of the Buyer and the Debtor or its estate.

   b. The Buyer is not merely a continuation of the Debtor or its estate, there is not substantial continuity between the Buyer and the Debtor, and there is no continuity of enterprise between the Debtor and the Buyer.

E. **Miscellaneous**

12. To the extent any Conclusion of Law set forth in Section II, Paragraphs 1-11 herein constitutes a Finding of Fact, this Court so finds.

Based on the foregoing Findings of Fact and Conclusions of Law,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED, EFFECTIVE IMMEDIATELY, AS FOLLOWS:**

A. The relief requested in the Sale Motion is granted and approved in all respects. The Asset Purchase Agreement and the Sale are hereby approved in all respects.

8

B.    The Debtor is authorized and directed to take any and all actions necessary or appropriate to (i) consummate the Sale of the Assets to the Buyer (including, without limitation, to convey to the Buyer any and all of the Assets intended to be conveyed) and the closing of the Sale in accordance with the Sale Motion, the Asset Purchase Agreement and this Order; and (ii) perform, consummate, implement and fully close the transactions contemplated in the Asset Purchase Agreement together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Asset Purchase Agreement.

C.    Upon the Closing, the Assets transferred, sold, and delivered to the Buyer shall be free and clear of all encumbrances, obligations, liabilities, contractual commitments, claims, including, without limitation, any theory of successor liability, de facto merger, or substantial continuity, whether based in law or equity, employee benefit obligations (including, without limitation, under the Employee Retirement Income Security Act, the Comprehensive Omnibus Budget Reconciliation Act, CERCLA and all other Environmental Laws), any security interest, mortgage, lien, charge against or interest in property, adverse claim, claim of possession, right of way, license, easement or restriction of any kind, including, but not limited to, any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership or any option to purchase, option, charge, retention agreement that is intended as security or other matters (hereinafter collectively referred to as "Liens" such term to be deemed to exclude any and all Permitted Liens) of any person or entity that encumber or relate to or purport to encumber or relate to the Assets. Nothing in this Order or the Asset Purchase Agreement releases, nullifies, precludes, or enjoins the enforcement of any liability to a governmental unit under

police or regulatory statutes or regulations that any entity would be subject to as the owner or operator of property after the date of entry of this Order. Nothing in this Order or the Asset Purchase Agreement authorizes transfer to the Proposed Buyer of any licenses, permits, registrations, or other governmental authorization and approvals without the Proposed Buyer's compliance with all applicable legal requirements under non-bankruptcy law governing such transfers.

D. The Buyer is not a successor to the Debtor or its estate by reason of any theory of law or equity and the Buyer shall not assume or in any way be responsible for any liability or obligation of the Debtor or its estate, except as otherwise expressly provided for in the Asset Purchase Agreement.

E. Effective on the date of entry of this Order, except as otherwise expressly provided for in the Asset Purchase Agreement, all entities, including, but not limited to, the Debtor, creditors, employees, former employees and shareholders, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, maintaining any authority relating to environmental laws, and their respective successors or assigns, (except as provided in paragraph C above), shall be permanently and forever barred, restrained and enjoined from commencing or continuing in any manner any action or other proceeding of any kind against the Buyer as alleged successor or otherwise with respect to any Liens arising out of or related to the Sale.

F. Except as otherwise provided in paragraph C above, each and every term and provision of the Asset Purchase Agreement, together with the terms and provisions of this Order,

shall be binding in all respects upon the Debtor, its estate, its creditors and the Debtor's shareholders, all entities and third parties, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, maintaining any authority relating to environmental laws, and their respective successors or assigns, including, but not limited to all non-debtor parties to any Assumed Contracts that may be assigned to the Buyer under the Asset Purchase Agreement and persons asserting any Lien against or interest in the Debtor's estate or any of the Assets to be sold and assigned to the Buyer irrespective of any action commenced that contests the Debtor's authority to sell and assign the Assets or that seeks to enjoin such Sale and/or assignment.

G. Except as otherwise expressly provided for in the Asset Purchase Agreement, all entities holding Liens of any kind and nature are hereby barred from asserting such Liens against the Buyer and/or the Assets and, effective upon the transfer of the Assets to the Buyer at the Closing, the Liens, including those asserted by Respondent, Champion Energy, Inc., shall attach to the proceeds of the Sale with the same force, validity, priority and effect, if any, as the Liens formerly had against the Assets, and the Debtor reserves the right to contest the extent, priority and/or validity of such liens. Champion Energy, Inc. reserves all rights with respect to priority of claims, except for the payment of Landlord administrative claims provided in paragraph O below.

H. This Order: (a) is and shall be effective as a determination that, upon Closing, all Liens existing as to the Assets conveyed to the Buyer have been and hereby are adjudged and declared to be unconditionally released, discharged and terminated, and (b) shall be binding upon

and govern the acts of all entities, including, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies or units, governmental departments or units, secretaries of state, federal, state and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Assets conveyed to the Buyer, all Liens of record as of the date of this Order shall be forthwith removed and stricken as against the Assets. All such entities described above in this Paragraph H are authorized and specifically directed to strike all such recorded Liens against the Assets from their records.

     I.     If any person or entity that has filed statements or other documents or agreements evidencing Liens on, or interests in, the Assets shall not have delivered to the Debtor prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of Liens and easements, and any other documents necessary for the purpose of documenting the release of all Liens that the person or entity has or may assert with respect to the Assets, the Debtor is hereby authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Assets.

     J.     Any and all Assets in the possession or control of any person or entity, including, without limitation, any former vendor, supplier or employee of the Debtor (a) shall be transferred to the Buyer free and clear of the Liens as of the date of closing, August 3, 2011 and (b) shall be

delivered at the Closing to the Buyer, at Buyer's sole cost and expense, unless, pursuant to the Asset Purchase Agreement, such person, entity, vendor, supplier or employee may retain temporary possession or control of any of such Assets, in which case the possession of such item shall be delivered to the Buyer at such time as is designated by the Buyer, at Buyer's sole cost and expense.

K. This Court retains jurisdiction, even after the closing of the Debtor's Chapter 11 cases, to:

(1) Interpret, implement and enforce the terms and provisions of this Order (including the injunctive relief provided for in this Order) and the terms of the Asset Purchase Agreement, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith;

(2) Protect the Buyer or any of the Assets from and against any of the Liens;

(3) Compel delivery of all Assets to the Buyer;

(4) Resolve any disputes arising under or related to the Asset Purchase Agreement, the Sale, or the Buyer's peaceful use and enjoyment of the Assets;

(5) Adjudicate all issues concerning (alleged) pre-Closing Liens and any other (alleged) interest(s) in and to the Assets, including the extent, validity, enforceability, priority and nature of all such (alleged) Liens and any other (alleged) interest(s); and

(6) Adjudicate any and all issues and/or disputes relating to the Debtor's right, title or interest in the Assets and the proceeds thereof, the Sale Motion and/or the Asset Purchase Agreement.

L. No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the Sale.

M. The failure specifically to include any particular provisions of the Asset Purchase Agreement in this Order shall not diminish or impair the efficacy of such provision, it being the intent of the Court that the Asset Purchase Agreement and each and every provision, term, and condition thereof be and, therefore is, authorized and approved in its entirety.

N. This Order and/or the Judgment Order entered in connection herewith shall be effective immediately upon entry and Federal Rules of Bankruptcy Procedure 6004(g) and 6006(d) are waived, and no automatic stay of execution, pursuant to Rule 62(a) of the Federal Rules of Civil Procedure, applies with respect to this Order and/or the Judgment Order entered in connection herewith.

O. The Debtor's assets are located in Bristol, Connecticut and have been stored during the pendency of the Chapter 11 case at premises leased by the following two landlords; WE Century Drive, LLC ("WE") for premises located at 190 Century Drive, Bristol, Connecticut, and GASKI Realty, Inc. ("GASKI") for premises located at 545 Broad Street, Bristol, Connecticut. Both Landlords have asserted administrative rent claims and related use and occupancy charges, expenses and/or attorneys' fees ("Rent Claims") and asserted assets located in their respective premises are not property of the Debtor's bankruptcy estate and such assets have been abandoned or forfeited to the Landlords under state law, and all such allegations

have been disputed by the Debtor (the "Title Claims")[4] At closing, the Debtor is authorized to disburse to WE and GASKI, in full, complete and final satisfaction of any and all administrative claims in this Chapter 11 case, including but not limited to, the Rent Claims and Title Claims, to (i) WE, the sum of $170,000 plus per diem of $440.83 commencing August 1, 2011 and (ii) to GASKI, the sum of $87,778.75 as of August 3, 2011 closing, with a $192.50 per diem. No other disbursements from the proceeds at closing are authorized and will be subject to further Order of this Court.

Dated at Bridgeport, Connecticut this 28th day of July, 2011.

By the Court

*Alan H. W. Shiff*
Alan H. W. Shiff
United States Bankruptcy Judge

---

[4] WE's Motions have tracked the continued Sale Hearings and GASKI's claims were fixed per Stipulation and Order dated January 11, 2011 (Doc. Id. No. 207).